**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CARLTON DOUGLAS YEAGER,

                    Petitioner,                  Case Number: 21-cv-11153
                                                Honorable Denise Page Hood

v.

JAMES SCHIEBNER,[1]

                    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

This matter is before the Court on Carlton Douglas Yeager's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  He challenges his 2017 convictions for armed robbery.  Yeager, proceeding *pro se*, seeks relief on the ground that insufficient evidence supported his convictions.

For the reasons set forth below, the Court denies the petition and declines to issue a certificate of appealability.  The Court grants Yeager leave to proceed *in forma pauperis* on appeal.

---

[1] The proper respondent in a habeas case is the custodian of the facility where the petitioner is incarcerated.  *See* Rule 2(a), Rules Governing Section 2254 Cases.  The Court orders that James Schiebner, the warden of Petitioner's current place of incarceration, be substituted as the Respondent.

## I.  Background

The Michigan Court of Appeals summarized the evidence presented at trial as follows:

> This case arises from an incident that occurred at FA Beauty Supply and Hair Braiding in Mount Clemens on May 29, 2016. The prosecution presented evidence that while Shalanda Lucas was having her hair braided by Fatoumata Kone, defendant entered the store armed with a BB gun and demanded that Lucas give him her belongings. The store's surveillance video showed a masked individual enter and leave the store. Lucas testified that the person, whom she identified as defendant, threatened her with a gun and demanded her property. Defendant's GPS tracking device placed him near the store at the time of the robbery. Police testimony established that defendant was arrested shortly after the incident based on a description provided by Lucas. Defendant was carrying a backpack containing clothing items similar to those worn by the robber. A BB gun was found under bushes at a nearby business and forensic testing revealed "very strong support" that defendant was a contributor to DNA found on the gun. After being arrested and placed in a police vehicle, defendant attempted to flee and assaulted two officers. Defendant did not present any evidence at trial.

*People v. Yeager*, No. 337787, 2018 WL 4603862, at *1 (Mich. Ct. App. Sept. 25, 2018).

Following a jury trial in Macomb County Circuit Court, Yeager was convicted and sentenced as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to concurrent terms of 300 to 400 months' imprisonment for the armed robbery conviction and 12 to 24 months' imprisonment for each count of resisting or obstructing a police officer. *Id.*

Yeager filed an appeal in the Michigan Court of Appeals and raised four claims, including a challenge to the sufficiency of the evidence. The Michigan Court of Appeals affirmed Yeager's convictions. *Id.* The Michigan Supreme Court denied leave to appeal. *People v. Yeager*, 503 Mich. 955 (2019).

Yeager filed a motion for relief from judgment in the trial court, which the trial court denied. *See* 7/16/2019 Dkt. Entry, *People v. Yeager*, 2016-002243-FC (Macomb Cty. Cir. Ct.). The Michigan Court of Appeals and Michigan Supreme Court denied Yeager leave to appeal the trial court's decision. *See People v. Yeager*, No. 351948 (Mich. Ct. App. March 31, 2020); *People v. Yeager*, 953 N.W.2d 406 (Feb. 2, 2021).

Yeager then filed a habeas corpus petition, raising this claim:

> The determination by the Michigan Court of Appeals that the state presented sufficient evidence to sustain Petitioner's conviction of armed robbery was based on an unreasonable determination of the facts in light of the evidence.

The case was assigned to the Honorable Sean F. Cox. Judge Cox summarily denied the petition on the merits and declined to issue a certificate of appealability. *Yeager v. Campbell*, 2021 WL 2856508, at *4 (E.D. Mich. July 8, 2021).

Three weeks later Yeager filed a motion for relief from judgment pursuant to Rules 60(b)(3) and (6) of the Federal Rules of Civil Procedure, arguing that the court palpably erred by denying the petition. (ECF No. 6.) Yeager asked the Court to reinstate his petition and direct Respondent to file an answer to the petition. Judge

Cox determined that the Rule 60(b) motion was a "second or successive" habeas petition because it challenged the Court's previous merits determination. (ECF No. 7.) The Court transferred the motion to the Sixth Circuit Court of Appeals for consideration as a motion to file a second or successive habeas petition. (*Id.*) The Court of Appeals held that the Rule 60(b) motion should be construed as falling under Federal Rule of Civil Procedure 59(e) and, as such, the motion was not a second or successive petition. *In re: Yeager*, No. 22-1177 (6th Cir. Aug. 29, 2022). The Court of Appeals remanded the case to this Court to consider the merits of Petiotiner's motion under Rule 59(e). *Id.*

On remand, the Court granted the Yeager's motion and reinstated the habeas corpus petition to allow consideration of the merits of the petition after Respondent filed an answer and the relevant state court record. (ECF No. 10.)

Respondent filed an answer in opposition and media files of surveillance video. (ECF No. 16) Yeager has filed a reply brief. (ECF No. 19.)

The case was reassigned to the undersigned on March 25, 2025, due to Judge Cox's retirement.

## II.  Legal Standard

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on

4

the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 548 U.S. 122, 124-25 (2018) (quoting 28 U.S.C. § 2254(d)).  The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

Yeager argues that insufficient evidence was presented to support his armed robbery conviction. He maintains that the Michigan Court of Appeals' denial of this claim was based on an unreasonable determination of the facts and unreasonably applied clearly established Supreme Court precedent.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On habeas review, the sufficiency of the evidence inquiry involves "two layers of deference": one to the jury verdict, and a second to the Michigan Court of Appeals' decision. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)) (emphasis in *Jackson*). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

6

The standard for reviewing a state court's factual findings is rigorous. "[S]tate court factual findings are presumed correct and federal courts may displace them only when the findings are shown to be 'objectively unreasonable by clear and convincing evidence.'" *Hodge v. Plappert*, 136 F.4th 648, 666 (6th Cir. 2025) (en banc) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)). This is "a substantially higher threshold for obtaining relief" than arguing that the state court's factual findings were "incorrect." *Hale v. Cool*, 122 F.4th 637, 645 (6th Cir. 2024) (quoting *Shoop v. Twyford*, 596 U.S. 811, 819 (2022)) (quotation marks omitted).

The Michigan Court of Appeals denied relief as follows:

Defendant was convicted of armed robbery, the elements of which are:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v. Chambers*, 277 Mich. App. 1, 7; 742 N.W.2d 610 (2007).]

MCL 750.530(2) defines "in the course of committing a larceny" as including "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." This definition was added by the Legislature in 2004. It "considerably broadened the scope of the robbery statute, MCL 750.530, to encompass a 'course of conduct' theory of robbery, which specifically includes 'an attempt to commit the larceny[,]'" so that "a completed larceny is no longer necessary to sustain a conviction for the

7

crime of robbery or armed robbery." *People v. Williams*, 491 Mich. 164, 184; 814 N.W.2d 270 (2012). "[T]he specific intent necessary to commit larceny is the intent to steal another person's property." *People v. Cain*, 238 Mich. App. 95, 120; 605 N.W.2d 28 (1999). "Because intent may be difficult to prove, only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent." *Harverson*, 291 Mich. App. at 178.

Defendant only challenges that there was no evidence that he intended to steal anything. But Lucas testified that while defendant put a gun to her face, he told her to "get the f--k off your phone and give me your s--t." Defendant's demand of Lucas's property was sufficient to demonstrate his intent to steal her property. That defendant intended to commit a larceny is further supported by the evidence that he entered the store with his face covered; he had a BB gun that looked like a real weapon; he pointed the gun at Lucas; he fled after the incident, and he attempted to flee from the police after he was arrested. *See People v. Hawkins*, 245 Mich. App. 439, 458; 628 N.W.2d 105 (2001) ("A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense.").

Contrary to defendant's assertion, Lucas's testimony regarding defendant's statement was not impeached by the surveillance video or the GPS tracking information. Lucas admitted that the surveillance video did not show defendant pointing the gun at her face. Our review of the surveillance video confirms that it does not show defendant pausing and pointing a gun at Lucas's face. Lucas, however, testified that the video did not show the area where defendant paused. The video shows a large empty area in front of Lucas. If defendant paused and pointed the gun at Lucas outside the view of the camera, it would appear that he was more than several feet away from her when he did so. Lucas testified that defendant was not inches from her face, but it felt like it was in her face. Although defendant may not have paused within inches, or even feet, of Lucas's face, the video does not refute that he pointed a gun at her and told her to give him her belongings. Moreover, although the GPS tracking information established that defendant was only in the store for less than a minute, this does not refute that he attempted to commit a larceny of Lucas's property during that period of time.

> Defendant points to several other pieces of evidence that he claims demonstrate that he was merely cutting through the store, including (1) he was aware that he was wearing a GPS tracking device; (2) he was due to be released from parole and the tether in 35 days; (3) he went past the cash register; (4) he did not pick up Lucas's phone or purse; (5) Lucas's written statement did not include that defendant said anything to her, and (6) Kone did not hear defendant say anything.  These matters, however, affect only the weight of the evidence and the credibility of the witnesses.  "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v. Unger*, 278 Mich. App. 210, 222; 749 N.W.2d 272 (2008). Viewed in a light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction of armed robbery and, in particular, to show that he intended to steal Lucas's property. *Wolfe*, 440 Mich. at 515.

*Yeager*, 2018 WL 4603862, at *2-3.

The state trial court's decision is consistent with clearly established federal law and was not based on an unreasonable determination of the facts.  The court examined the evidence supporting the conviction—here, primarily, the testimony of Shalanda Lucas—in a light most favorable to the prosecution, with specific reference to the elements of the charged crimes as established by state law.  Yeager argues that in doing so, the Michigan Court of Appeals improperly concluded that the surveillance video and GPS tracking information did not impeach Lucas's testimony.

Yeager's argument relies on his interpretation of the evidence and evaluation of witness testimony.  He argues that expert witness Andrew Menichino's GPS-related testimony showed that he never stopped while inside the store and that this

testimony impeached Lucas's testimony that he stopped in front of her, pointed the gun, and demanded her property.  Menichino testified that the GPS device collected location information "basically once a second," the software translates the "very complex ... information, and "transposes it on top of a Google map."  (ECF No. 17-12, PageID.715-16.)  Based on that information, Menichino tracked where Yeager was "one minute at a time" but could not discern the exact path Yeager took from one minute to the next.  (*Id.* at PageID.734.)  Based on this testimony, it would not have been patently incredible for the jury to conclude that Menichino's testimony was not inconsistent with Lucas's testimony that Yeager stopped inside the salon.

Yeager correctly notes that the surveillance video does not show the gunman stopping in front of Lucas.  Lucas was cross-examined extensively about this and explained that Yeager stopped in an area of the salon which was not visible in the video.  Yeager argues that this testimony is both unbelievable and inconsistent with Menichino's testimony.  Menichino did not testify about this issue so Lucas's testimony was not impeached by his on this point.  Whether Lucas's testimony should be believed is a question of credibility which this Corut does not evaluate on habeas review. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000).

Additionally, the trial court instructed jurors: "You do not have to accept or reject everything a witness says.  You're free to believe all, none, or any part of a person's testimony."  (ECF No. 17-12, PageID.822.)  "'[A] a reasonable juror may

10

freely choose between conflicting testimony so long as the chosen testimony is neither implausible nor patently incredible." *Houston v. Tanner*, No. 24-1963, 2025 WL 3251114, at *6 (6th Cir. Nov. 21, 2025) (quoting United States v. Caraway, 411 F.3d 679, 682 (6th Cir. 2005)). Here, the jury could reasonably have concluded that Lucas was mistaken about whether Yeager stopped but not about whether he pointed the gun at her and demanded her belongings.  Yeager has not shown that the verdict necessarily rested on patently incredible factual findings.

Therefore, the Michigan Court of Appeals' denial of this claim did not rely on an unreasonable determination of facts or unreasonably apply clearly established Federal law.  *See* 28 U.S.C. § 2254(d).  Habeas relief will be denied.

## IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253.  A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Yeager fails to make a substantial showing of the denial of a constitutional right  Accordingly, the Court declines to issue a COA.

## V.  Conclusion

For the reasons set forth, the Court DENIES the petition for writ of habeas corpus and DENIES a certificate of appealability.  The Court grants Petitioner leave

to appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

SO ORDERED.


                                        _____
                                        DENISE PAGE HOOD
                                        United States District Judge

Dated: _____